**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TAIT USA, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>SMALL BUSINESS ADMINISTRATION, and<br>ISABELLA CASILLAS GUZMAN,<br><br>      Defendants. | Civil Action No. 22-1358 (FYP) |

**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF**

Plaintiff TAIT USA, LLC ("TUSA" or the "Company"), by and through its attorneys, alleges and states as follows:

**INTRODUCTION**

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by Defendants Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman.

2. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, as amended, 15 U.S.C. § 9009a, established the Shuttered Venue Operators Grant ("SVOG") Program to provide emergency financial assistance to seven categories of businesses (live venue operators, live venue promotors, theatrical producers, live performing arts organization operators, museum operators, motion picture theater operators, and talent representatives) impacted by the global COVID-19 pandemic. The SVOG Program is administered by the SBA and Administrator Casillas Guzman.

3.      In early spring 2020, the COVID-19 pandemic, as well as associated restrictions regarding live entertainment, halted TUSA's business.  As a live performing arts organization operator, TUSA suffered a 91% loss in revenue in 2020 as compared to in 2019 and the majority of employees were furloughed.  TUSA requires an SVOG award to sustain operations and bring back key employees—exactly the purpose of the SVOG Program.

4.      As the creator, organizer, and producer of shows for Celine Dion, Lady Gaga, Metallica, and Reba + Brooks & Dunn among others at large venues such as the Wells Fargo Center in Philadelphia, PA, and the Colosseum in Las Vegas, NV, TUSA demonstrated eligibility for a SVOG award in its April 2021 application to the SBA as a "theatrical producer," based upon the SVOG statue which defined "live venue operator or promoter, theatrical producer, or live performing arts organization" as an entity that "as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists for which . . . not less than 70 percent of earned revenue of the . . . entity is generated through . . . cover charges or ticket sales, ***production fees or production reimbursements***, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise . . . ." *See* 15 U.S.C. § 9009a(3)(A)(i) (emphasis added).

5.      On August 21, 2021, the SBA denied TUSA's April 2021 application for an SVOG grant as a "theatrical producer" without explanation.

6.      Following the SBA's initial denial, TUSA used the SBA's July 2021 Eligibility Matrix to appeal and request consideration as a "live performing arts organization operator."

7.      On October 26, 2021, the SBA denied TUSA's appeal, providing only a conclusory statement with the appeal that failed to explain the agency's reasoning.

8.     On July 22, 2022, Defendants issued another decision on TUSA's application that again denied TUSA's application for SVOG funds as a "live performing arts organization operator." Proposed Am. Compl., Ex. 1.

9.     The SBA's July 22, 2022 decision was arbitrary, capricious, and contrary law because the SBA (1) retroactively applied eligibility requirements established by guidance that was issued after TUSA submitted its application; (2) applied several unpublished and inaccurate criteria to deny TUSA's application; (3) did not apply eligibility requirements evenly or fairly across all applications; (4) treated TUSA disparately from similarly situated companies that were granted SVOG awards; (5) improperly faulted TUSA for failing to submit information that TUSA was not required to submit and that the Company had no notice the SBA would consider relevant since the agency gave no reason for denying the Company's application.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

11.     Venue lies in this district under 28 U.S.C. § 1391(e)(1).

12.     This Court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13.     Plaintiff TAIT USA, LLC, specializes in the creation, organization, and production of live music performances with more than 70% of TUSA's revenue coming from production fees. The shows TUSA creates include Celine Dion, Lady Gaga, Metallica, and Reba + Brooks & Dunn among others.

14.    Defendant Small Business Administration is an independent agency of the federal government.  The SBA's mission is to help Americans start, build, and grow businesses.

15.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and oversees its operations.  Administrator Casillas Guzman is sued in her official capacity.

**BACKGROUND**

**A.    Shuttered Venue Operators Grant Program**

16.    The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act"), signed into law December 27, 2020, included $15 billion for seven specific categories of businesses (live venue operators, live venue promotors, theatrical producers, live performing arts organization operators, museum operators, motion picture theater operators, and talent representatives).  Pub. L. No. 116-260 § 324.  The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000 for SVOG awards.  Pub. L. No. 1172 § 5005(a).

17.    SVOG awards may be used for specified business expenses, including payroll, rent, and utility payments, that are incurred between March 1, 2020, and December 31, 2021.  15 U.S.C. § 9009a(d)(1)(A)(i).

18.    An eligible entity may receive a SVOG award in an amount equal to 45% of its gross earned revenue in 2019 up to a maximum award of $10 million.  15 U.S.C. § 9009a(c).

19.    Eligible entities under the Act include seven types of organizations: live performing arts organization operators, theatrical producers, live venue operators, live venue promoters, museum operators, motion picture theatre operators, and talent representatives.  15 U.S.C. § 9009a(a)(1)(A).

4

20. In addition to falling within an eligible business category, to qualify for a SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25% reduction of gross earned revenue during at least one quarter of 2020 as compared to 2019, and has reopened or intends to reopen. 15 U.S.C. § 9009a(a)(1)(A). The Act lists a number of characteristics that would render an entity ineligible, including, *inter alia*, issuance of securities on a national securities exchange, or presenting live performances of a prurient sexual nature. *Id.* § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B).

21. The Act defines both "live performing arts organization operators" and "theatrical producers" to include an entity that as a principal business activity organizes, promotes, produces, or hosts "live concerts" for which there is a ticketed cover charge, performers are paid, and not less than 70% of revenue of the entity is generated through "production fees or production reimbursements". 15 U.S.C. § 9009a(a)(3)(A)(i).

22. The Act specifies that for a "live performing arts organization operator" or "theatrical producer" to be eligible it must have additional characteristics, the entity must work with events at eligible venues (1) that have a defined performance and audience space; (2) that use sound mixing equipment, a public address system, and a lighting rig; (3) for which one or more individuals carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, or box office manager; (4) for which tickets are sold or a cover charge imposed for most performances; (5) that fairly pay artists; and (6) are marketed through print or electronic publications, websites, mass email, or social media. 15 U.S.C. § 9009a(a)(1)(A)(iii).

23. On April 23, 2021, the SBA issued an initial set of FAQs as guidance for the SVOG applicants. *See* SBA, SVOG FAQs (Apr. 23, 2021), https://www.sba.gov/sites/default/files/2021-

04/SVOG%20FAQs%204-23-21%20FINAL-508.pdf.   In those FAQs, the SBA defined a "theatrical producer" without citation to any authority used for the definition.

24.     The SBA opened applications for the SVOG program on April 26, 2021.

25.     TUSA prepared its application based on upon the reasonable understanding and belief that its application would be evaluated according to the SVOG statute and the FAQs published on April 23, 2021.  TUSA expended substantial time and money preparing its application based upon the SVOG statute and the FAQs published by the SBA on April 23, 2021.

26.     On July 13, 2021, the SBA issued an "Eligibility Matrix" that created separate and distinct "eligibility criteria" for all seven types of eligible entities (live venue operators, live venue promoters, theatrical producers, live performing arts organization operators, museum operators, motion picture theater operators, and talent representatives).

27.     The July Eligibility Matrix used the definition of a "theatrical producer" from the April 23, 2021 FAQs to require that a "theatrical producer" either have: (1) "a non-passive profit (net income or loss) interest in a theatrical production (other than as a vendor or service provider)"; or (2) "sole or joint rights to control a theater production."  *See* SBA, SVOG Eligibility Matrix (July       13,       2021),       https://www.sba.gov/sites/default/files/2021-07/SVOG_EligibilityMatrix_v2%20final-508_0.pdf.   The Eligibility Matrix cites 15 USC § 9009a(a)(10)(A)(i) as the basis for these two eligibility requirements for a "theatrical producer." The cited portion of the statute, however, identifies the criteria eligibility for a "talent representative," not "theatrical producers."  *See* 15 USC § 9009a(a)(10)(A)(i) ("The term 'talent representative' – (A) means an agent or manager that – (i) as not less than 70 percent of the operations of the agent or manager, is engaged in representing or managing artists and entertainers[.]").

28.     For "Live Performing Arts Organization Operator" (as distinct from the criteria for "Theatrical Producer"), the SBA's new July 2021 Eligibility Matrix and FAQs tracked the statute, requiring that a "live venue performing arts organization operator . . . [m]ust create, produce, perform, _**and/or**_ present live performances for audiences in qualifying venues, including amphitheaters, concert halls, auditoriums, theaters, clubs, festivals, and schools." (emphasis added).  The SBA's regulatory guidance further stated that a "live performing arts organization operator . . . [m]ust have principal business activity as . . . creating, producing, performing, _**and/or**_ presenting live events by performing artists, with not less than 70% of earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (incl. alcohol), **production fees/reimbursements**, and/or nonprofit educational initiatives." (emphases added).

29.     On July 22, 2021, almost three months after TUSA submitted its application, the SBA issued revised FAQs that added or "substantially changed" over 50 "answers" from the previous version of the FAQs, which were in effect at the time that TUSA initially submitted its SVOG application.    *See*  SBA,  SVOG  FAQ  (July  22,  2021) https://www.sba.gov/sites/default/files/2021-07/7-22-21%20SVOG%20FAQ%20FINAL-508.pdf.   By the time the July 2021 Eligibility Matrix and FAQs had been published, the SBA had already awarded over 9,000 SVOG grants totaling over $9.6 billion, including over 600 grants for theatrical producers totaling $750 million, and over 2,600 grants for live performing arts organization operators totaling $1.9 billion.

**B.     TUSA's SVOG Application and the SBA's Denial**

30.     On April 26, 2021, TUSA applied for a SVOG award of $10,000,000.

31.     In its application, TUSA demonstrated that the Company satisfied the statutory eligibility criteria for a SVOG award as a "theatrical producer."  TUSA demonstrated that its losses

in 2020 exceeded the 25% statutory threshold by submitting income statements for 2019 and 2020. The Company demonstrated that substantially more than 70% of revenue was attributable to production fees and submitted documentation showing that TUSA met the other application criteria. TUSA also provided the certifications of eligibility required by the SBA's guidance on SVOG applications.

32.    On August 21, 2021, TUSA learned from the SBA's portal that its application had been denied. The SBA denial did not identify any deficiencies or give any reason for the agency's conclusion that TUSA was not eligible.

33.    On information and belief, TUSA's initial application as a theatrical producer was improperly and arbitrarily denied based on retroactive application of eligibility criteria published almost three months after TUSA applied and based on the inapplicable statutory definition of a "talent representative." Furthermore, even if the SBA's retroactive application of eligibility criteria to TUSA's application was proper, TUSA still qualified for an SVOG grant under the revised criteria.

34.    On September 3, 2021, TUSA submitted an administrative appeal to the SBA. Based upon the July 2021 Eligibility Matrix, TUSA changed its eligibility category to "live performing arts organization operator" from "theatrical producer," as permitted by the SBA's procedures.

35.    Because the SBA provided no reason for denying TUSA's April 2021 application, TUSA did not know what, if anything, was missing from its application and thus had no notice of what additional information the SBA would look for in its appeal.

36.    TUSA's appeal explained in detail and with supporting documentation how the company meets each of the general eligibility requirements for a SVOG award and each of the

8

specific eligibility requirements for award as a live preforming arts organization operator. TUSA's supporting documentation included (1) venue floorplans designating seating for audience members and stages for performers, (2) evidence of ticketing for events and payments to performers, and (3) media materials for performances, event dates, ticket releases, and prices. The Company affirmed that every venue where TUSA created, organized, and produced shows was a professional music venue with a public address system, lighting rigs, and sound mixing equipment. TUSA also submitted venue payrolls, venue crew lists, and venue guides for performances by Celine Dion, Lady Gaga, Elton John, Metallica, Reba + Brooks & Dunn, Pink, and John Mayer.

37.    TUSA also highlighted the dozens of artists for whom the Company had produced concerts. Specifically, TUSA's application reflected that they had produced concerts for 42 of the Top 50 touring artists in North America in terms of gross earnings. These artists collectively averaged $1.9 million in gross earnings *per show*, demonstrating that the performers commanded fair compensation for their work in accordance with the SVOG's eligibility requirements.

38.    Because more than 70% of TUSA's revenue derived from production fees and production reimbursements for the creation, organization, and production of live performances at venues such as the Wells Fargo Center in Philadelphia, PA, the Colosseum in Las Vegas, Nevada, and Capital One Arena in Washington, D.C., TUSA clearly qualified as a "live performing arts organization operator" under the SVOG statute and the SBA's July 2021 criteria.

39.    Ever continuing on the path of issuing retroactive guidance, on October 20, 2021, while TUSA's appeal was pending, the SBA continued to change its regulatory guidance in the form of issuing revised SVOG FAQs. By that time, the SBA had awarded over 12,000 SVOG grants totaling over $13.4 billion.

9

40.     On October 26, 2021, the SBA notified TUSA by email that its appeal was denied. The email listed a standard set of the reasons an appeal could be denied based on the SVOG Eligibility Matrix, and stated that TUSA's appeal was declined "at least in part" based on reasons 10 and 11. Reason 10 is listed as "[d]id not meet the principal business activity standard for the entity type under which applied." Reason 11 is listed as "[d]id not meet one or more of the eligibility criteria specific to the entity type under which applied." The email then provided a boilerplate statement:

> Please note the list provided in this email may not be a comprehensive list of reasons for your decline. To receive additional information as to why your SVOG application was declined, please complete this form (direct link: https://forms.office.com/g/B7DeKGgF1z). The SBA will aim to provide this more specific detail on appeal declines once the SVOG initial application reviews are complete.

41.     On May 16, 2022, TUSA filed this action for judicial review of the denial.

## C.     The SBA Granted SVOG Awards to Similarly Situated Companies

42.     The SBA awarded SVOG grants to multiple companies whose principal business activities are comparable to those of TUSA. In TUSA's appeal, the Company described itself as the "concert touring branch" of the TAIT group of companies whose "exclusive business is creating live entertainment." TUSA further explained that the Company's principal business activities include "collaborating with performing artists to imagine, design, manufacture and deliver custom concert touring concepts for top performing artists[.]" TUSA emphasized that the Company was "involved in every step of the production, not as a traditional vendor or service provider, but as an integral and fully collaborating part of the production team from initial concept through design, construction and operation." TUSA is aware of multiple companies, and their affiliates, that received SVOG grants whose public facing description of their principal business activities mirror TUSA's description of its activities in TUSA's application and appeal.

43.    On June 28, 2021, the SBA awarded an $8,200,015 grant to All Access Staging & Productions, Inc. ("All Access") as a "theatrical producer."  On its LinkedIn page, All Access describes itself as a "full-service staging company" that specializes in, inter alia, concerts, tours, and festivals.  *See* All Access, LinkedIn https://www.linkedin.com/company/all-access-staging-and-productions/about/ (last visited Sept. 12, 2022).  The "cornerstone of [All Access's] business is [its] stage structure," including "performance stages to band risers and crowd control."  All Access further advertises that its technical design team can "handle any fabrication project, including custom scenery, flooring, integrated LED lighting, and more."

44.    The SBA awarded three SVOG grants totaling over $21.7 million to Clearwing Productions, Inc. and its affiliates (collectively, "Clearwing") as "live venue operator[s] or promoter[s]."  On July 2, 2021, the SBA awarded a $9,167,000 grant to Clearwing Productions, Inc.  On August 11, 2021, the SBA awarded a $3,366,738 grant on Clearing Productions Colorado, LLC.  And on August 12, 2021, the SBA awarded a $9,187,800 award to Clearwing Productions Arizona, LLC.  On its website, Clearwing advertises that it the company "provides creative design, production, support, and technology rental services for musicians, venues, sporting events, corporate gatherings, brand experiences, performing arts centers, churches, and more."  *See* Clearwing, https://www.clearwing.com/production-rentals) (last visited Sept. 12, 2022).  This includes providing "production support" to concert tours and musical festivals, as well as design, build, and installation services to a variety of live venues.  Clearwing, Our Story, clearwing.com/our-story (last visited Sept. 12, 2022).

**D.    The SBA's Final Decision**

45.    On July 22, 2022, the SBA rescinded its original denial of TUSA's award and issued a new denial (the "July 2022 Decision").

11

46.     The SBA's July 2022 Decision improperly denied TUSA's application, asserting multiple grounds for denial that lacked factual support, contradicted the SBA's past practice, and imposed requirements on TUSA that had never been publicly communicated via the July 2021 Eligibility Matrix, or the ever evolving iterations of the SVOG FAQs.

47.     *First*, the SBA determined that TUSA's principal business activity was that of an ineligible service provider or support company, "mostly in stage design and construction," and not as a "live performing arts organization operator." The SBA's characterization of TUSA's principal business activities utterly fails to reflect the extent of TUSA's involvement in the production of live events. TUSA is integral in the earliest stages of event planning, and is paid to do everything from specifying and recruiting other key event leadership, selecting the professionals and companies that will supply various components of an event, show, or tour, developing the concept of the show, setting a show's schedule and budget, and working directly with the performer to bring the show to life. Furthermore, even if TUSA's principal business activities did consist primarily of stage design and construction, the SBA has awarded grants to companies who publicly describe the core of their business as providing staging, construction, and installation services for live entertainment events.

48.     *Second*, the SBA denied TUSA's application on the ground that it did not "purport to be responsible for all elements of production, a requirement to be a producer." The SBA has never published guidance requiring that a "live performing arts organization operator" must be "responsible for all elements of production." Indeed, the SBA's statement fundamentally misunderstands the nature of live entertainment production, in which multiple companies often collaborate to produce different elements of a live event.

49.     *Third*, the SBA denied TUSA's application on the ground that the Company did not "purport to have an investment at risk or level of management and financial control over the shows required to be considered a producer receiving production fees."  This is yet another eligibility criterion that the SBA has invented out of whole cloth.  Neither the statute, the SVOG application, nor the SBA guidance require a "live performing arts organization operator" to substantiate an investment risk or level of management and financial control over a live event.

50.     *Fourth*, the SBA denied TUSA's application on the ground that the Company did not directly receive 70% of earned revenue from ticket sales.  Again, this requirement is not found in the statute, the SVOG application, or applicable SBA guidance, and had never been communicated to TUSA prior to the Company submitting its original application or appeal.

51.     *Fifth*, the SBA prejudices TUSA's application for providing equipment to artists in connection with the production of live events, including "winches", "hoists", "piano shells", and "handrails."  The SBA concludes that this is further evidence that TUSA is an ineligible service provider or support company.  The SBA did not apply the same standards to TUSA's competitors, including All Access, which advertises a host of equipment for rent to clients, including but not limited to, "winches", "lifts", "piano shells," and "handrails." *See* All Access, Equipment, https://allaccessinc.com/staging-equipment/ (last visited Sept. 12, 2022).

52.     *Finally*, the SBA's decision states that TUSA did not provide particular information that the SBA would have found relevant, e.g., contracts between TUSA and event managers or artists.  The SBA failed to notify TUSA that this was the basis for its rejection of TUSA's original application and appeal until *after* TUSA filed this action in federal court.

53.     The July 2022 Decision concludes the that the similarly situated companies described above, All Access and Clearwing, "appear to be ineligible" for their SVOG grants.

Nevertheless, the SBA states that it has not made a final determination with respect to these companies or sought to recover funds.

54. The SBA's July 22, 2022 denial of TUSA's application is the agency's final decision.

## CLAIMS FOR RELIEF

55. The courts recognize a strong presumption favoring judicial review of administrative action.

56. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

57. The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

58. The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E), respectively.

59. The SBA is an "agency" whose final actions are reviewable under the APA.

## COUNT I—ARBITRARY AND CAPRICIOUS AGENCY ACTION

60.    TUSA realleges and incorporates by reference each of the preceding paragraphs and allegations.

61.    In deciding TUSA's SVOG application, the SBA retroactively applied eligibility requirements established by guidance that was issued after TUSA submitted its application. TUSA thus did not have fair notice and opportunity to tailor its application to those requirements.

62.    The SBA's July 2021 guidance incorporates eligibility requirements inapplicable to theatrical producers as defined by the statute.

63.    The SBA did not apply those eligibility requirements evenly or fairly across all applications, and instead granted some applications before the requirements were issued.

64.    On administrative appeal, the SBA faulted TUSA for failing to submit information that TUSA was not required to submit and that the Company had no notice the SBA would consider relevant since the agency gave no reason for denying the Company's application.

65.    The SBA's denial of TUSA's application conflicts with the evidence of TUSA's eligibility presented to the SBA in the Company's application and appeal.

66.    The SBA additionally erred in: (1) applying an arbitrary interpretation of live performing arts organization operator that required TUSA "to purport to be responsible for all elements of production"; (2) requiring TUSA to "purport to have an investment at risk or level of management and financial control over the shows required to be considered a producer receiving production fees"; and (3) requiring TUSA to show that the Company directly received 70% of earned revenue from ticket sales.

67.    The SBA erred by treating TUSA disparately from similarly situated companies that were granted SVOG awards. The SBA approved awards collectively totaling nearly $30 million

15

to companies that they have yet to rescind or recover.  Such disparate treatment hinders TUSA's ability to compete in the marketplace and adds additional injury to a company aiming to recover from a 91% pandemic-imposed drop in revenue.

68.    For each of these reasons, the SBA's denial of TUSA's SVOG award request is arbitrary and capricious.

### COUNT II—AGENCY ACTION CONTRARY TO LAW

69.    TUSA realleges and incorporates by reference each of the preceding paragraphs and allegations.

70.    TUSA satisfies the Act's general eligibility criteria for an SVOG award as a theatrical producer and the specific eligibility criteria published by the SBA.

71.    TUSA satisfies the Act's general eligibility criteria for a SVOG award and specific eligibility criteria for an award as a live performing arts organization operator.

72.    The SBA applied an interpretation of "live performing arts organization operator" not supported by the governing statute in denying TUSA's SVOG application.

73.    The SBA's denial of TUSA's SVOG award request therefore violated the Act and is contrary to law.

### COUNT III—AGENCY DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

74.    TUSA realleges and incorporates by reference each of the preceding paragraphs and allegations.

75.    The SBA's denial of TUSA's SVOG award request is supported by no evidence in the record, let alone substantial evidence.  TUSA's application and appeal presented evidence which demonstrates TUSA's eligibility for a SVOG award.

16

76.     The SBA's denial of TUSA's SVOG award request is thus unsupported by substantial evidence.

## PRAYER FOR RELIEF

For the foregoing reasons, TUSA respectfully requests that this Court:

1.     Declare unlawful and set aside Defendants' denial of TUSA's SVOG award request.

2.     Preliminarily and permanently order Defendants to consider TUSA's application for a SVOG award consistent with applicable law and the evidence before the SBA.

3.     Preliminarily and permanently order Defendants to award TUSA $10,000,000 in SVOG funds.

4.     Preliminarily and permanently order Defendants to retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and/or the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Plaintiff's SVOG initial grant award.

5.     Preliminarily and permanently order Defendants to produce the entirety of the administrative record, including, but not limited to, all emails and other documents related to the eligibility criteria for awards applied prior to the issuance of the Eligibility Matrix and FAQs in July 2021, and preliminarily and permanently order Defendants to produce the entirety of the administrative record, including, but not limited, the documents that the SBA used to determine the eligibility of similarly situated companies, All Access and Clearwing.

6.     Award Plaintiff its costs and reasonable attorney fees; and

7.     Grant such other and further relief as the Court deems just and proper.

Dated: September 12, 2022                    Respectfully submitted,

                                             */s/* Caroline L. Wolverton
                                             Angela B. Styles
                                             D.C. Bar No. 448397
                                             Caroline L. Wolverton
                                             D.C. Bar No. 496433
                                             AKIN GUMP STRAUSS HAUER & FELD LLP
                                             2001 K Street, N.W.
                                             Washington, D.C. 20006
                                             (202) 887-4000

                                             *Counsel for Plaintiff TAIT USA, LLC*